## BAUM v. TRANTHAM.

1. PURCHASER—JUDGMENT—SHERIFF'S SALE—FORECLOSURE.—A purchaser at a sheriff's sale, under execution issued on a judgment junior to a mortgage, who seeks to refer his title to a judgment senior to such mortgage, the sale being made after filing of *lis pendens*, is a proper party to an action to foreclose such mortgage.

2. PURCHASER — JUDGMENT — MORTGAGE — FORECLOSURE — CODE — CASES DISTINGUISHED.—A purchaser of realty at a sheriff's sale,

under an execution issued on a judgment junior to a mortgage, such judgment creditor being a party to a suit of foreclosure on such mortgage, commenced after levy, but before sale, *lis pendens* filed after levy, but before sale, cannot refer his title to a judgment senior to the mortgage, and thus defeat the mortgage lien. Code, sec. 153. *Cases distinguished: Ex parte Mobley,* 19 S. C., 337; *Henderson* v. *Trimmier,* 32 S. C., 270; *Garvin* v. *Garvin,* 34 S. C., 398; *Woodward* v. *Woodward,* 39 S. C., 259.

MR. CHIEF JUSTICE MCIVER *dissenting.*

Before ALDRICH, J., Camden, July 27, 1894. Reversed.

Action by Herman Baum and Mamus Baum, as Baum Brothers, assignees of Herman Baum, against W. D. Trantham, N. E. Trantham, J. R. Falls, Appleton & Co., Patterson, Renshaw & Co., and J. T. Hay, for foreclosure of a mortgage, and to set aside a sheriff's deed of the land, covered by the mortgage to J. T. Hay, commenced December 13, 1892. The principal question in the case was whether the sale to Hay under a junior judgment could be referred to a senior judgment, and thus divest the mortgage lien. The following is so much of the Circuit decree as pertains to this question:

The next exceptions I will consider refer to the *lis pendens.* It is necessary to bear in mind that the Patterson, Renshaw & Co. execution was levied upon the land on December 12, 1892, and the sale to Hay was made on salesday in January. The action of Baum Bros. to foreclose their mortgage was begun and the notice of the pendency of the action filed on December 13, 1892, the day after the levy and the day upon which the advertisement of the sale thereunder was published in the newspaper. After the sale of the sheriff to Hay in January, 1893, Baum Bros. prepared and served an amended complaint, to which Hay is made a party defendant. This amended complaint alleges the facts in relation to the execution, the levy and sale to Hay. Hay, therefore, was not a party to the action until after he had become the owner of the mortgaged premises. Creighton & Son, whose judgment supports Hay's title, are not parties

to either the original or amended summons and complaint of Baum Bros. Neither Hay's name nor that of Creighton is included in the notice of pendency of action filed by Baum Bros. So far as I am aware, no notice of the pendency of the action was filed by Baum Bros. under their amended summons and complaint.

The first exception of Baum Bros. is "that the referee erred in not holding that *lis pendens*, having been filed prior to the purchase of the property in issue by the defendant, J. T. Hay, under the execution sale of Patterson, Renshaw & Co., the said defendant bought subject to the pendency of the suit of plaintiffs." Is the title of Hay affected by *lis pendens* filed by Baum Bros.? The deed of a purchaser at sheriff sale has relation back to the judgment, or at least to the levy under which it was made—*Ex parte Mobley*, 19 S. C., 347; *Bank* v. *McMahon*, 37 S. C., 317. As we have seen, Hay's title relates to and refers back to the judgment of Creighton & Son, to which the proceeds of the execution sale was applied; hence Hay's title is "necessarily sustained by the older lien" of the judgment of Creighton & Son—*Garvin* v. *Garvin*, 34 S. C., 398; *Henderson* v. *Trimmier*, 32 S. C., 270. "Such deed (the sheriff's) must be given such an effect as will preserve and make effectual the lien under which the sale was made"—Freeman on Exec., sec. 333; Mobley's case, *supra*, and authorities there cited. In Mobley's case the issue was, did the sheriff's deed for the land, based upon a levy prior to the institution of the foreclosure suit and filing of *lis pendens*, and a sale made after suit begun and *lis pendens* filed, give him a right to become a party to the suit for the foreclosure of a senior mortgage? The Court sustained Mobley's position, and ordered that he be made a party to the foreclosure suit, because his title had relation back to the judgment, or at least to the levy, both of which were prior to the filing of the notice of *lis pendens*. The effect of this decision is that Mobley was not, in law, a purchaser subsequent to the filing of the *lis pendens*. The *lis pendens* filed by Baum Bros. does not

deprive Hay of his title. He is now a party to this action, and as such will be bound by the judgment of this Court. Practically, therefore, the Court is asked to divest Hay of his title because of the filing of the *lis pendens*. This exception and the second exception of Baum Bros. will be considered together. The second exception is: "That the referee erred in not holding that when an action is begun for foreclosure of a mortgage, and *lis pendens* is filed, prior to the sale of the property, any purchaser subsequent thereto must take subject to the decree of the Court in the pending suit." I do not think that this exception relates the law correctly. "The notice given by *lis pendens* affects only purchasers from those who are parties or privies to the action, and does not extend so as to affect those who claim under parties who are not parties to the litigation"—13 Am. and Eng. Ency., 902. "It would be a great hardship, and public policy would not justify a requirement that a purchaser should make investigation outside of the parties to the record"—Bennett on *lis pendens*, sec. 97. J. T. Hay may have seen the *lis pendens* filed by Baum Bros.; if he did, he saw the record of the levy prior to its filing, and he also saw that Creighton & Son were not parties to the Baum Bros. action, and that their names were not mentioned in the *lis pendens* filed. He knew that he had the right to buy any interest of Creighton & Son in the premises, and, substantially and legally, he bought that interest at the sheriff's sale, and his title is not affected by the *lis pendens*, because at the time of his purchase neither he nor Creighton & Son were parties to the Baum Bros. suit. The execution and sale under the Patterson, Renshaw & Co. judgment certainly are not null and void; and, therefore, Hay's title is supported by and derived from the Creighton & Son judgment. The referee held that Hay was not a purchaser subsequent to the filing of the *lis pendens*, and I think that his "holding" is correct. The recording act, Rev. Stat., new sec. 1951, old sec. 1776, after directing what papers may be recorded, viz: deeds, mortgages, &c., provides that such re-

cording shall constitute conclusive "notice" to subsequent purchasers and encumbrances. The act is broad, and does not in terms limit this "notice" to subsequent "purchasers or encumbrances" from the maker of the instrument recorded; yet the act is so construed. This rule of construction has been followed for ages. The reason of the rule is applicable to Code, sec. 153. To adopt any other rule, and construe the section as giving "notice" of the action pending to any and all subsequent purchasers, from any and all persons, not parties to the action, or "notice" filed, would constitute a snare for the innocent and a clog and menace to progress. This exception is overruled.

Baum Bros'. next exceptions are:

3. "That the referee should have held that while *lis pendens* filed in a foreclosure suit does not preclude a sale under a judgment, yet with *lis pendens* filed prior to such sale, the Court has assumed jurisdiction of the *res*, and whoever purchases at such judgment sale, purchases subject to the adjudication of the rights of the parties in interest by the decree of the Court."

4. "That he (the referee) erred in not holding that the position of J. T. Hay, as purchaser subsequent to filing of *lis pendens*, placed him on a different footing to a purchaser under a junior judgment, with no suit pending, taking title from a senior judgment, and thereby divesting an intermediate lien."

5. "That the referee erred in not holding that sec. 153 of the Code of Civil Procedure is without qualification as to the position of a purchaser after suit for foreclosure is begun and *lis pendens* filed."

6. "That the referee erred in holding that because the sheriff applied the proceeds of the sale of the land under the Patterson, Renshaw & Co. judgment to the Creighton judgment, that, therefore, notwithstanding *lis pendens* at the date of such sale, Hay, the purchaser, takes freed of *lis pendens;* whereas he should have held that the sale being under the Patterson, Renshaw & Co. judgment, and they

parties to the action then pending, he stood in their shoes, and cannot divest himself of this position on the ground that the sale can be referred to a senior judgment; as he and they, if they had purchased, bought subject to notice of the pending suit."

I have already considered some of the questions raised by these exceptions, especially those raised by the fifth, and I shall not again consider these questions. Whatever may be the history of the notice of *lis pendens* under the civil and common law, it is regulated by statute in this State. Code, sec. 153, provides that the "plaintiff," in certain cases enumerated, "may file" a "notice of the pendency of the action, containing the names of the parties, the object of the action, and the description of the property." * * * "From the time of the filing only shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby; and every person whose conveyance or encumbrance is subsequently executed or subsequently recorded, * * * shall be bound by all proceedings taken after the filing of such notice, to the same extent as if he were made a party to the action." Sec. 153, *supra*, explicitly says that the notice therein provided for shall contain a statement "of the object of the action." In the notice filed in this case by Baum Bros., as plaintiffs, the "object of the action" is stated to be the foreclosure of the mortgage of Trantham to H. Baum, then assigned to plaintiffs. There is not a word about the Falls or Kaminsky mortgage. The notice provided for is the act of the plaintiffs; it is filed by them; it is not the process of the Court, nor does it operate as an injunction, attachment, or order appointing a receiver of real estate. What penalty, if any, is imposed upon the person who, in violation of the notice and the provisions of the section, subsequently buy the property or take an encumbrance of it? Are they divested of the right then acquired? · The section says nothing to that effect; to the contrary, it provides that such person "shall be bound by all proceedings" * * * "as if he were made a party to the

action." "The underlying, if not the sole, object of the maxim, *pendente lite nihil innovetur*, is to keep the subject of the suit or *res* within the power of the Court until the decree shall be entered, and thus to make it possible for courts of justice to give effect to their judgment and decrees." 13 Am. & Eng. Enc., 870. "During the pendency of the suit, the property may be sold, the purchaser taking it subject to the title of the grantors, as determined by the suit, and he will be bound by the decree in such suit." *Ib.*, 897. Counsel lay great stress upon the following citation in actions for foreclosure of mortgages: "The *lis pendens* of the cause enables the court to give efficiency to the lien at the period when it first attached prior to the commencement of proceedings." *Ib.*, 903, 905. The "initial point of time," when the lien of the Creighton judgment attached, is older, prior to the "period" when the Baum mortgage lien "first attached," and that judgment lien supports Hay's title. If "efficiency" is to be given to the lien of the Baum mortgage, it will be given to the lien of the Creighton judgment.

Hay is now a party to the action, and as such will be bound by the decree herein. Why, then, resort to the *lis pendens*, and contend that he is bound by that also? I see the purpose of Baum Bros. in raising this question. They have allowed Hay to secure a title to the land, and have discovered that their mortgage has lost its lien thereon. To recover their former condition, they contend, substantially, that the decree of the Court must dispose of the case as it stood when they began their original suit, viz: direct a sale of the premises, and that the proceeds of sale be applied to the lien of the parties to that action, according to the order of priority. The result would be another sale of the land in the Baum action, and a setting aside of the sheriff's sale. At such new sale, Baum Bros. would have another chance to realize upon their mortgage lien. But if full and free effect is given the *lis pendens*, the Court, under the circumstances in this case, would make no such decree. We have seen that a party named in the *lis pen-*

*dens* may sell his interest in the property—that is admitted
in one of the exceptions; that Hay is an "innocent pur-
chaser," and "courts will endeavor to so apply the doctrine
of *lis pendens* as to save, if possible, the rights of innocent
parties." 13 Am. & Eng. Ency., 871. In addition, the
Court would, in the decree, "preserve" the rights of Creigh-
ton & Son as the owner of the senior judgment, because he
was not a party to the original action, nor is he a party to
the action, as amended, of Baum Bros. Hay was not a
party to the original action, and his title was perfect, com-
pleted, before the amended complaint was filed or served
upon him. Surely it is "possible" for the Court "to save"
these "rights" for Hay; further, I think it is the duty of
the Court, in the decree, "to save" and protect Hay's rights.
Baum Bros'. action rests upon the amended complaint, and
the judgment must be responsive thereto.

    I do not think that the *lis pendens* affected the judgment,
execution, levy, and sale, so as to avoid or even impair the
same, and, therefore, conclude that Hay's title is valid.
These exceptions are overruled.

    The plaintiffs appeal on the following grounds.
    I. Because his Honor, while holding correctly that the
sole purpose and effect of the notice of *lis pendens* is to pre-
serve the property brought into the jurisdiction of the Court
intact, and to keep it under its control, thus preserving the
status it had when the notice was given, and to make final
disposition thereof by its decree, according to the rights of
the parties before it, yet erred in deciding that the *lis pen-
dens* filed herein failed in such purpose, and allowing a sale,
procured by one of the parties to the action, Patterson, Ren-
shaw & Co., of the land, the property of another party, W.
D. Trantham, and made by the sheriff to Hay subsequent
to its filing, to actually divest the lien of Baum Bros., then
subsisting over the land and sought to be enforced.
    II. Because his Honor erred in holding that "practically
the Court is asked to divest Hay of his title to the land,

because of the filing of the *lis pendens*, while the only contention, as plainly expressed in the exceptions to the referee's report under consideration, was that Hay purchased the land subject to the decree of the Court, and that his subsequently acquired right and title to the land should be subordinated to the rights of the plaintiffs, as existing therein at the time of the filing of the *lis pendens*.

III. His Honor erred in holding that, because Hay was made a party defendant to the amended complaint subsequent to the sale under the execution of Patterson, Renshaw & Co., he is not bound by the *lis pendens* filed before the sale; whereas the true purpose and effect of so making him a party, was because he was a proper party, and the rights of plaintiffs and himself could both be conserved by the Court in a just subordination.

IV. His Honor erred in deciding that, because Creighton & Son and Hay were not parties to the original complaint, Hay was, as purchaser at the execution sale of the land, not bound by *lis pendens*.

V. His Honor erred in deciding that, because the sale under the Patterson, Renshaw & Co. judgment was for some purposes referable to the judgment of Creighton & Sons, senior to the mortgage of plaintiffs, such sale, though made after filing the *lis pendens*, relieved against its effect, and gave Hay an absolute title to the land, which the Court was bound to let take the land virtually out of its control, and away from its decree.

VI. His Honor erred in holding that Hay bought at such sale the interest of Creighton & Son in the land, and that his purchase was from them, and not from a party to the action; whereas the land was the property of Trantham, and was sold and conveyed as such, he being a party to the action, and Creighton & Son had no leviable or salable interest in the land, and had only the right to levy upon and sell the same as the property of Trantham.

VII. His Honor erred in holding that *Ex parte Mobley*, 19 S. C., 337, decided, in effect, that "Mobley was not in

law a purchaser subsequent to the filing of *lis pendens*,"
when that case decides merely that Mobley, as a subsequent
purchaser, under section 153, Code, was by construction of
that section a proper party to the action for foreclosure, and
ought to be allowed to answer, as the only method to pro-
tect himself under the decree of the Court in the case against
gross fraud.    It does not decide that the lien of the mort-
gage was divested by such sale.

VIII. His Honor erred in not distinguishing the case at
bar from the doctrine announced in *Henderson* v. *Trimmier*,
and *Garvin* v. *Garvin*, 34 S. C.

IX. His Honor erred in holding that the construction of
General Statutes, section 1776 (1951), which limits the no-
tice of record to purchasers from the makers of the instru-
ment, applies to Code, section 153, the law of *lis pendens*,
and makes it of force only against purchasers from parties
to the action.

*Mr. J. D. Kennedy*, for appellants.

*Mr. J. T. Hay*, contra.

Oct. 5, 1895.   The opinion of the Court was delivered by

MR. JUSTICE POPE.   This cause comes before us on the
appeal of the plaintiffs in the above entitled action, which
was heard in the Court of Common Pleas for Kershaw
County, in this State, by his Honor, Judge Aldrich, at the
summer, 1894, term of said Court, and who filed his decree
some time in July, 1894.   The facts are few and uncontra-
dicted, and may be summarized as follows: The defendant,
W. D. Trantham, became indebted to the firm of Patterson,
Renshaw & Co., who sued their claim to judgment on the
20th day of December, 1891; but prior to this, said Tran-
tham, being indebted to B. F. Creighton & Son, in February,
1888, was sued to judgment by said firm; and also the said
Trantham, being indebted to Herman Baum, on the 28th
day of April, 1888, executed to him a mortgage on a certain
tract of land.   There was no execution lodged with the

sheriff in the case of Creighton & Son *v.* W. D. Trantham, but Patterson, Renshaw & Co. issued execution on their judgment against Trantham, on the 12th day of December, 1892, and on that day the sheriff thereunder levied upon the tract of land that Trantham had mortgaged to Herman Baum, who had assigned his said mortgage to Baum Bros. This Baum mortgage had been recorded in the office of the register of mesne conveyance of Kershaw County, within the forty days after its execution. The plaintiffs, on the 13th day of December, 1892, began their action to foreclose the mortgage executed by Trantham, and to this suit made all persons, holding encumbrances junior to that held by the plaintiffs, parties to their action. Amongst others thus made parties were Patterson, Renshaw & Co.; and on the same day, the 13th day of December, 1892, the plaintiffs filed the usual notice of *lis pendens.* However, Patterson, Renshaw & Co. persisted in their effort to sell this tract of land now in controversy, and it was sold on salesday in January, 1893, by the coroner for Kershaw County (the sheriff being disqualified to act in the premises), the said J. T. Hay being the purchaser at said sale, and he was made a party to the present action as a subsequent purchaser. In his answer he contended that plaintiffs could not foreclose their mortgage so as to defeat his rights as owner of said lands, because, he alleged, the plaintiffs' mortgage had been discharged as a lien upon the land through its sale by the coroner—the proceeds of the sale having been applied to the older lien of the judgment held by Creighton & Son. In a very carefully prepared decree, Judge Aldrich sustained the defense of Hay, and adjudged that plaintiffs' action be dismissed, and, as we before remarked, the plaintiffs now appeal from that decree. Let this decree and plaintiffs' exceptions thereto appear in the report of the case. We confess that this question, as presented, is interesting of itself, and has been made more so by the circuit decree and the argument of counsel. It seems to us that the defendant, J. T. Hay, was very properly made a party

to this action. Not only does the provision of our Code of Civil Procedure—sec. 143—fully sustain such a position, but also the judgment of this Court in *Ex parte Mobley, in re McAfee* v. *McAfee,* 19 S. C., 337.

But this is not the question in this cause. There are a line of our decisions that go very far in the direction, that a purchaser at a sheriff's sale, where land is sold under the execution of a judgment junior in lien to a mortgage thereon, may yet refer for the security of his title to any judgment against the judgment debtor, which was senior in lien to the mortgage, whether there was any execution issued under such senior lien or not. Reference is made to the cases of *Ex parte Mobley, supra; Henderson* v. *Trimmier,* 32 S. C., 270; *Garvin* v. *Garvin,* 34 S. C., 398; *Woodward* v. *Woodward et al.,* 39 S. C., 259, as authority for this position. A review of these cases, in order that we may understand the extent of the doctrines therein established, is necessary. As to *Ex parte Mobley, supra,* the contention arose as follows: Mobley had signed as surety the bond of McAfee, as administrator of some estate; this administrator, when brought to account before the judge of probate, was decreed to pay some $2,000; failing to pay this money, an execution was issued against McAfee's property, which was being proceeded with in its enforcement by a sale; but it seems that after this levy upon McAfee's property, the holders of mortgages, who were his near relatives, began their actions to foreclose the two mortgages thereon, and filed a notice of *lis pendens* in each action; the property was sold after these notices of *lis pendens* had been filed, and at such sale Mobley, to protect himself as surety of the administrator, purchased the property. And after his purchase, exhibited his petition to be made a party to each of said actions for foreclosure of mortgage, alleging that each of said mortgages were fraudulent and pretensive. The Circuit Judge denied Mobley's right to be made a party, and when Mobley appealed to this Court, it was adjudged that he had the right of being made a party, and

contesting the legality of such mortgages. In the reasoning of the Court, considerable comment was indulged in as to the effect of the notice of *lis pendens*, and also reference was made to the principles of law underlying the protection of a purchaser at a sheriff's sale. As to this last, position was taken that a purchaser at a sheriff's sale had the right to invoke in his protection, not only the levy, but the judgment itself. It must be apparent, therefore, that the principles of that case are not the same as those here involved. The judgment debtor, under whose judgment McAfee's property was sold, was not a party to the actions of foreclosure. While in the case at bar he is, and has been all the time, a party to the action. Again, the question before the Court in *Ex parte Mobley*, was alone as to his (Mobley's) right of being made a party to the action. It would seem that the solution of that question—and we admit that such *judgment* was correctly made—did not necessarily involve the reasoning employed to enforce it. The writer of this opinion may be allowed to drop the plural, and say that, so far as I am concerned, I am prepared to justify the judgment of the Court in *Ex parte Mobley*, upon what seems to me a plainer ground than that adopted by the majority of the Court in establishing such judgment; for it seems to me that Mobley had an equity which entitled him to be made a party, which equity might have been jeopardized by staying his hands and allowing a judgment in foreclosure to be made, and a sale thereunder take place, while he remained silent. Besides, the section of the Code of Civil Procedure—section 143—fully justified the judgment of this Court, in allowing him to be made a party to the contest over the validity of a mortgage upon land to which he had acquired title since the suit of *McAfee* v. *McAfee* in foreclosure had been begun.

Let us next examine the case of *Henderson* v. *Trimmier*, *supra*. It seems that in this case, while there was still a balance due upon a judgment to one Cooley from Henderson, F. M. Trimmier, in 1876, loaned to said Henderson

the sum of $300, which debt Henderson secured to Trimmier by the execution of a mortgage upon a tract of land upon which the Cooley judgment was a prior lien. In 1880, one Mathis obtained a judgment against Henderson, and an execution was issued upon this last judgment, levied upon the land in question, and it was sold to a Mrs. Henderson, the proceeds of sale being applied to the payment of the oldest judgment, and the balance of such proceeds were paid to Trimmier, who had purchased the Mathis judgment. Trimmier had ordered the sale under the Mathis judgment, and was the next highest bidder to the purchaser, Mrs. Henderson. After Mrs. Henderson had gone into possession of the land, Trimmier proceeded to sell the land, under the power to sell contained in his mortgage. Then it was that Mrs. Henderson brought her action against Trimmier, the mortgagee, to enjoin the sale under his mortgage, upon the ground that the sale of the land by the sheriff had divested the lien of Trimmier's mortgage. The Court held the plaintiff, Mrs Henderson, was entitled to a perpetual injunction against the mortgage of Trimmier. It is very evident that there was no notice of *lis pendens* involved in this action; but it was purely a question whether a judgment existed as a lien prior to the mortgage attempted to be foreclosed by Trimmier.

Next, as to *Garvin* v. *Garvin, supra*. Without attempting to set out the facts underlying this controversy, it will be sufficient to say that the propriety of a nonsuit granted by Judge Hudson was the question submitted to this Court; this question turned upon the existence of a valid judgment prior to the deed executed to the plaintiff by the defendant in execution, and this Court decided that there was such prior judgment, and reversed the judgment below granting the nonsuit.

Lastly, the case of *Woodward* v. *Woodward, supra*, will be found not to involve any principle like that which centres about the notice of *lis pendens*, but the real question submitted in that case for the decision of this Court, was

whether a deed of conveyance, made during the interval
when a judgment was not an enforcible lien, and a subse-
quent period when by renewal it was made an enforcible
lien, would pass the land freed from lien of the older judg-
ment.   This Court held that the sale having been made
during that interval, the judgment was not a prior lien
upon the land, and allowed the grantee, under the deed, to
hold his land freed from any lien of the judgment.

Thus it is apparent that the effect of the notice of *lis
pendens* was not involved in any of these cases except that
of *Ex parte Mobley*, *supra*, and that as to the last case such
effect of the notice of. *lis pendens* was virtually left a *res
integra*.   This being so, it will become necessary for us to
consider this question very closely.   What is the notice of
*lis pendens?*   Our Code of Civil Procedure, at section 153,
thus states it: "In an action affecting the title to real prop-
erty, the plaintiff, at the time of filing the complaint, or at
any time afterwards, or whenever a warrant of attachment,
under chapter 4, title 7, part 2, of this Code of Procedure,
shall be issued, or at any time afterwards, the plaintiff, or a
defendant when he sets up an affirmative cause of action in
his answer and demands substantive relief at the time of
filing his answer, or at any time afterwards, if the same be
intended to affect real estate, may file with the clerk of
each county in which the property is situated a notice of
the pendency of the action, containing the names of the
parties, the object of the action, and the description of the
property in that county affected thereby, and if the action
be' for the foreclosure of a mortgage, such notice must be
filed twenty days before judgment, and must contain the
date of the mortgage, the parties thereto, and the time and
place of recording the same.   From the time of filing only
shall the pendency of the action be constructive notice to a
purchaser or encumbrancer of the property affected thereby,
and every person whose conveyance or encumbrance is sub-
sequently executed or subsequently recorded shall be deemed
a subsequent purchaser or encumbrancer, and shall be bound

20—45

by all proceedings taken after the filing of such notice to the same extent as if he were made a party to the action. For the purposes of this section an action shall be deemed to be pending from the time of filing such notice, but such notice shall be of no avail unless it shall be followed by the first publication of the summons, or an order therefor, or by the personal service thereof on a defendant within sixty days after such filing. And the Court in which the said action was commenced may, in its discretion, at any time after the action shall be settled, discontinued or abated, as is provided in section 142, on application of any person aggrieved, and on good cause shown, and on such notice as shall be directed or approved by the Court, order the notice authorized by this section to be cancelled of record by the clerk of any county in whose office the same may have been filed or recorded; and such cancellation shall be made by an endorsement to that effect on the margin of the record which shall refer to the order, and for which the clerk shall be entitled to a fee of twenty-five cents."

The effect of this provision of the Code of Procedure seems to be, that after the notice of *lis pendens* is filed, any one who purchases the land affected by such *lis pendens* shall be treated as one who had notice of the lien of the mortgage. In this particular case, would not such purchaser, Hay, be bound by notice of the fact that the plaintiff in execution, Patterson, Renshaw & Co., were proceeding to sell the land in contention under a judgment junior to the mortgage of Baum Bros.? Would not the *lis pendens* prove, if a contrary view should prevail, a delusion and a snare to such plaintiffs as Baum Bros.? We admit that our Courts have gone to great lengths in giving relief to an innocent purchaser of property sold under execution by the officers of law, on whom is the duty of making sales of a judgment debtor's property, by referring such sales to executions older than that under which the property was actually sold, or, even allowing the existence of a judgment upon which no execution had been issued, to protect such purchaser. But

were not those decisions of our Courts made to protect the innocent? There is no allegation here that Hay was any such innocent purchaser. Under our statutes, constructive notice, at least, was given to him by the notice of *lis pendens*, that the judgment of Patterson, Renshaw & Co. was junior in lien to Baum Bros.' mortgage, and that Patterson, Renshaw & Co., as the holders of such junior lien, were parties to the action of Baum Bros. to foreclose their prior mortgage.

Under our views, this is the first instance in which this precise question has been presented to our Court for solution, and in the action we feel it to be our duty to take, it is proper to state that these views do not necessitate the reversal of any prior decisions of our Courts. We think the Circuit Judge failed to grasp the true questions at issue, to wit: the effect of the notice of *lis pendens* upon a purchaser of land sold under a judgment and execution junior in lien to the mortgage sought to be foreclosed in the action in which the notice of *lis pendens* was filed, and to which action the holders, Patterson, Renshaw & Co., of the judgment and execution, under which the land was sold, were parties defendant, and that Hay, the purchaser, thereby became fully notified of those vices in such sale.

The Circuit Court decree should be reversed.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the action remanded to that Court for such further proceedings as may be necessary to afford the plaintiffs full relief.

MR. JUSTICE GARY, *concurring*. I concur in so much of the opinion of Mr. Justice Pope as decides that the deed of conveyance of the land to J. T. Hay, Esq., is not superior to the mortgage herein, and remands the case to the Circuit Court. The ground of my concurrence is because the title of J. T. Hay, Esq., is dependent upon the judgment and execution of Patterson, Renshaw & Co., which were unquestionably affected by the *lis pendens*, as Patterson, Renshaw

& Co. were parties to the action for foreclosure of the mortgage.

MR. CHIEF JUSTICE MCIVER, *dissenting.* Being unable to concur in the views taken of this case by Mr. Justice Pope, I propose to state, as briefly as practicable, what I understand to be the correct view. For a proper understanding of the questions presented by this appeal, it will be necessary to state substantially the facts out of which these questions arise, as to which there seems to be no dispute. The land which is the subject of the action, belonging to the defendant, Trantham, was covered by sundry liens, having priority according to date as follows: 1st. A judgment in favor of Creighton & Son, entered in February, 1888. 2d. A mortgage held by plaintiffs, dated 24th April, 1888. 3d. A judgment in favor of Patterson, Renshaw & Co., entered 20th February, 1891. Under an execution issued upon this last mentioned judgment the land was levied upon on the 12th of December, 1892, and on the next day, 13th December, 1892, the same was advertised for sale, on the first Monday of January, 1893. On the same day, to wit: 13th December, 1892, the present action was commenced to foreclose the mortgage above mentioned, and notice of *lis pendeus* was then filed. To this action Patterson, Renshaw & Co. were made parties defendants, but Creighton & Son were not made parties. On the first Monday in January, 1893, the land was sold, under the levy above mentioned, by the coroner of the county (the sheriff being disqualified), and bid off by J. T. Hay, who complied with the terms of sale and received titles for the land. Thereupon the plaintiffs amended their complaint by making the said J. T. Hay a party defendant, and he filed his answer, setting up title in himself superior to the lien of plaintiff's mortgage.

It is not, and cannot be, denied, since the cases of *Vance* v. *Red*, 2 Speer, 90; *Agnew* v. *Adams*, 17 S. C., 364; *Henderson* v. *Trimmier*, 32 S. C., 269, and *Garvin* v. *Garvin*,

34 S. C., 388, that where land is sold under an execution to enforce a judgment junior to a mortgage, if there is, at the time of the sale, a judgment having a lien on the land senior to that of the mortgage, the title of the purchaser will be protected by such senior judgment, and the lien of the mortgage will be divested by such sale. That was precisely the case in *Henderson* v. *Trimmier*, *supra*, and is so in the case now under consideration, except that here an action had been commenced before the sale, and notice of *lis pendens* had been filed, and this circumstance is relied upon to take this case out of the operation of the general rule. So that the only question presented by this appeal is, whether the fact that the plaintiffs had commenced their action, and filed notice of *lis pendens* before the sale under which Hay claims, is sufficient to take this case out of the operation of the admitted general rule.

It certainly cannot be contended, with any show of propriety, that the effect of filing the notice of *lis pendens* is to extinguish or defeat the prior lien of the senior judgment; for that would put it in the power of one who holds a mortgage on land to supersede the lien of a judgment superior in rank to that of the mortgage, by simply commencing an action to foreclose his mortgage, and at the same time filing his notice of *lis pendens;* and surely no court would sanction such a doctrine as that. But that, as I understood it, is not what appellants contend for in this case. Their contention is that, so far as their rights are concerned, the sale under which Hay claims should be treated as a nullity, and that the Court should proceed to grant a judgment of foreclosure and sale under their mortgage; and that the proceeds of such sale should be applied to the extinguishment of the liens upon the land in the order of their rank as they stood at the commencement of the action—that is to say, first to the payment of the Creighton judgment, next to the payment of the plaintiffs' mortgage, and next to the payment of the judgment in favor of Patterson, Renshaw & Co. This would, of course,

involve the necessity of setting aside the sale under which the defendant, Hay, claims; and it is difficult to perceive upon what ground this could be done, especially in view of the fact that Creighton & Son, to whose judgment the sale must be referred, are not parties to the action.    No fraud is alleged, and certainly none has been proved, in making such sale, and, so far as I can perceive, no illegality of any kind is, or could be, imputed to that sale.    It was made under a valid execution, so far as appears, having a lien on the land, and the proceeds of such sale have been applied to the oldest lien on the land; so that the language of Judge Fraser, in *Henderson* v. *Trimmier*, *supra*, and quoted with approval by this Court in *Garvin* v. *Garvin*, *supra*, "the sale being for the benefit of the older judgment lien, the title under such is necessarily sustained by such older lien," seems eminently applicable to the case.    Besides, suppose the proceeds of the sale under which Hay claims had been sufficient to satisfy the judgment in favor of Creighton & Son, then there would be no senior judgment to which the proceeds of the foreclosure sale could be first applied, and the plaintiffs, as holders of the junior lien, would get rid of the senior lien and become first entitled to the proceeds of the foreclosure sale, although, in the case supposed as a test of the doctrine contended for, such senior lien had been extinguished by the money of the purchaser at the sheriff's sale, who had a right to suppose that he was buying a title referable to such senior lien.    It seems to me that to maintain such a doctrine as that contended for, it would be necessary to attribute a force and effect to a notice of *lis pendens* which, so far as I can learn, has never been attributed to it before, and which is altogether unnecessary to its true purposes.    The real object of such a notice is to prevent the necessity of constant amendments, bringing in purchasers from parties to a pending action as parties to such action; for, as said by Sir William Grant, master of the rolls, in *The Bishop of Winchester* v. *Paine*, 11 Ves., at page 196: "Otherwise suits would be indeter-

minable; or, which would be the same in effect, it would
be in the pleasure of one party at what period the suit
should be determined." But it never was designed to ope-
rate as an injunction, or to stay the enforcement of process
of the Court. This very case affords an illustration of the
impropriety of giving to a notice of *lis pendens* the force
and effect contended for. The conceded fact is, that the
execution under which the land was sold was levied *before*
the action was commenced, and, of course, *before* any no-
tice of *lis pendens* was filed; and while counsel for appel-
lants, in their argument here, repudiate the idea that such
a notice operates as an injunction, yet it seems to me that
the logical and necessary effect of the position for which
they contend is to make such notice operate as an injunc-
tion restraining the disposition of such levy. For if no
valid sale under such levy could be made, the practical
effect would be to enjoin the disposition of such levy—*not*
by the order of any court, but by the mere act of the par-
ties. Surely this is not allowable. But, in addition to
this, it seems to me that the case of *Ex parte Mobley*, 19
S. C., 337, recognized and applied in the recent case of
*Bank* v. *McMahon*, 37 S. C., 309, is absolutely conclusive.
In that case, as in this, very soon after the mortgaged prem-
ises had been levied on under execution, and before such
levy could be disposed of by a sale, by reason of the time
required by law for advertising such sale, the mortgagees
commenced their action to foreclose, and at the same time
filed notice of *lis pendens*, and the sale under which Mob-
ley claimed was made on the first saleday after the levy at
which it could have been made. So that both in that case
and in this the levy was made *before*, but the sale after, *lis
pendens* was filed. The Court held, in Mobley's case, that
his title would relate back at least to the date of the levy,
and hence he was a purchaser *before* notice of *lis pendens*.
So here Hay's title can relate back to the date of the levy,
and hence he can be regarded as a purchaser *before lis*

*pendens* filed; and, if so, then clearly the doctrine contended for, even if otherwise maintainable, cannot apply.

I desire to avail myself of this occasion to remove what seems to be a misapprehension of the opinion of the Court in the case of *Ex parte Mobley*, above referred to. In that case the Court considered the position of Mobley in both aspects, first, as a purchaser *after* notice of *lis pendens*, and, second, as a purchaser *before* notice of *lis pendens*, the latter of which was his real position. Hence the language quoted by counsel from page 340 must be regarded as applying only to the hypothesis that Mobley was a purchaser after *lis pendens filed*, while that found on pages 341–2 applies to the other hypothesis, to wit: that he was really a purchaser *before lis pendens* filed. This is evident from the use of the word "again," in opening the first paragraph on page 341. In other words, the Court, after holding that, under the circumstances of that case, Mobley was entitled to be made a party, even should he be regarded as a purchaser after notice of *lis pendens*, in order to enable him to litigate the question of fraud in the mortgages, which could not otherwise be done, proceeded to show that such was not his true position; for, under the authorities cited, Mobley's purchase could have relation back to the levy, which was made before the commencement of the action, and, of course, before *lis pendens* filed, and, for that reason, he was clearly entitled to be made a party to the action.

It seems to me, therefore, that, in any view of the case, the Circuit Judge was right in the conclusion which he reached, and his judgment should be affirmed.